DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-82-FDW

| KENNETH HAYES, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
| RAVEN MACK, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Raven Mack. (Doc. No. 14).

## I. BACKGROUND

### A. Procedural Background

Pro se Plaintiff Kenneth E. Hayes is an inmate of the North Carolina Department of Public Safety ("NCDPS"), currently incarcerated at Lanesboro Correctional Institution. Plaintiff filed this action on February 20, 2014, pursuant to 42 U.S.C. § 1983, in which he alleged that Defendant Raven Mack subjected him to excessive force on November 14, 2013. On April 7, 2014, the Court conducted a frivolity review, allowing Plaintiff's claim to proceed. (Doc. No. 7).

On March 23, 2015, Defendant filed the pending motion for summary judgment. (Doc. No. 14). On March 25, 2015, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be

1

submitted to the Court. (Doc. No. 16). Plaintiff did not file a response to the summary judgment motion, and the time to do so has passed.

B. Factual Background

1. The Alleged Excessive Force Incident and the Summary Judgment Evidence

a. Plaintiff's Allegations

As noted, Plaintiff did not respond to the summary judgment motion, and the time to do so has passed. Therefore, the only materials presented by Plaintiff as to his claim are the allegations in his Complaint. Plaintiff alleges in the Complaint that on November 14, 2013, while he was housed at Lanesboro Correctional Institution ("Lanesboro"), he was leaving his pod to go to the yard for outside exercise when Defendant told him to return to his pod because the yard was closed. (Doc. No. 1 at 4). He further alleges that Defendant later called for three inmates at a time to go to the library. Plaintiff alleges that he, along with two other inmates, left the pod to go to the library when Defendant ordered him back to the pod. Plaintiff alleges that he informed Defendant to stop singling him out. (Id.). Plaintiff alleges that while standing and waiting to be let back into his pod Defendant unexpectedly sprayed him in the eyes, nose, and mouth with mace "for no apparent reason." (Id. at 5). Plaintiff alleges that before Defendant sprayed him with the mace, Plaintiff "did not threaten defendant Mack in any fashion, wasn't aggressive in any way or break any prison rules." (Id.). Plaintiff alleges that he was treated for his exposure to mace and then placed in segregation. (Id.). Plaintiff alleges that he has been experiencing blurry vision, nose bleeds, sinus irritation, severe headaches, mental anguish, and emotional distress due to his mace exposure. (Id.).

b. Defendant's Summary Judgment Materials

In support of the summary judgment motion, Plaintiff has submitted the affidavit of

Defendant Mack, attached with the NCDPS Use of Force Policy. See (Doc. No. 14-2: Mack Aff.). According to Defendant Mack's affidavit, on November 14, 2013, Defendant Mack was working the Moore Unit, Side 2. (Id. at ¶ 4). Defendant was in the process of signing inmates out for library call when Plaintiff exited his assigned pod. (Id.). Defendant ordered Plaintiff to return to his pod three times. (Id.). Defendant gave Plaintiff another direct order to return to his pod, at which time Plaintiff appeared to walk toward Defendant. (Id.). However, Plaintiff stopped turned around and stated, "Fuck this, I'm tired of these stupid ass c/o's." (Id.). Plaintiff then stepped toward Defendant Mack and stated, "Fuck this, I'm turning up!" (Id.). Defendant understood that the term "turning up" is common street slang meaning that the individual intends to act out. (Id. at ¶ 5). Defendant believed that, by using that term and stepping toward her in violation of a direction order, Plaintiff intended to assault her. (Id.). Therefore, Defendant deployed two, ½ second bursts of OC pepper spray into Plaintiff's eyes per her training as a means to prevent an attack and maintain order. (Id.). Defendant was placed in handcuffs and escorted to segregation. (Id. at ¶ 6). Medical staff then examined and cleared Plaintiff, determining that there was no need for further treatment. (Id. at ¶ 7). According to Defendant Mack's affidavit, Plaintiff did not suffer an injury. (Id.).

Defendant has also presented the affidavit of non-party David Mitchell, Facility Administrator at Lanesboro, attached with the Incident Report and Administrative Remedy Procedure Grievance and Response. See (Doc. No. 14-1: Mitchell Aff.). Mitchell is responsible for overseeing all custodial operations and staff in his supervisory chain of command to ensure compliance with departmental policies. (Id. at ¶ 5). This includes reviewing use of force incidents at Lanesboro following an investigation. (Id. at ¶ 6). Mitchell states in his affidavit that he reviewed the incident report related to the November 14, 2013, use of force investigation

3

involving Plaintiff and Defendant. Mitchell's account of the incident corroborates Defendant's account. Mitchell states in his affidavit that after the use of force investigation, NCDPS management determined that the force used by Defendant on November 14, 2013, against Plaintiff was done in accordance with NCDPS policies and procedures. (Id. at ¶¶ 16-19). The investigation determined that the amount of force used against Plaintiff was reasonable and necessary because Defendant feared an assault due to the aggressive manner in which Plaintiff approached her. (Id. at ¶ 20). No corrective action was recommended. (Id.).

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the

4

nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

This is not to say that the "absence of serious injury" is irrelevant to the Eighth

5

Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 37-38 (citations omitted).

The Court finds that Defendant is entitled to summary judgment on Plaintiff's excessive force claim. That is, Defendant's evidence—which Plaintiff has not even attempted to rebut—shows that the force used on November 13, 2013, was appropriate to control Plaintiff, prevent injury to staff given his non-compliance with verbal orders, and was based on Defendant's reasonable belief that Plaintiff had communicated a threat to her.[1] Given the potential risk of harm to Defendant, two, ½ second bursts of OC pepper spray constituted an acceptable use of force to ensure compliance with a lawful order and to prevent injury. In sum, the evidence on summary judgment shows that the need for force and the amount of force used were closely matched, and Defendant used no more than minimal force, applied in a good-faith effort to stop Plaintiff's resistance after he refused to submit to orders. Furthermore, although the absence of

---

[1] As Plaintiff has not responded to the summary judgment motion, he is deemed to have abandoned his excessive force claim and, in any event, he has presented no evidence to rebut Defendant's evidence regarding use of force or the lack of injuries to Plaintiff. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). Plaintiff's allegations of excessive force and injuries are supported only by his own unsupported statements and, therefore, as a matter of law are simply insufficient to preclude summary judgment. "[A] self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment." Williams v. Giant Food, Inc., 370 F.3d 423, 433 (4th Cir. 2004).

serious injury is not dispositive in an excessive force action, the lack of serious injury may be considered in the analysis. Here, the evidence presented by Defendant on summary judgment—which, again, Plaintiff has not even attempted to rebut—indicates that Defendant suffered no injury as a result of the pepper spray.

In sum, for the reasons stated herein, Defendant is entitled to summary judgment as to Plaintiff's excessive force claim.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**, and this action is dismissed with prejudice.
2. The Clerk is directed to terminate this action.

Frank D. Whitney
Chief United States District Judge